**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------- X

TERRA TOWERS CORP., TBS                        :     Civil Action No.: _____
MANAGEMENT, S.A., and DT HOLDINGS, INC.,       :
                                               :
                      Petitioners,             :
            v.                                 :
                                               :
TELECOM BUSINESS SOLUTION, LLC, LATAM          :
TOWERS, LLC, and AMLQ HOLDINGS (CAY),          :
LTD.,                                          :
                                               :
                      Respondents.             :
----------------------------------------------------------------- X

<u>**NOTICE OF REMOVAL**</u>

Respondents Telecom Business Solution, LLC and LATAM Towers, LLC (collectively,
"Peppertree"), and AMLQ Holdings (Cay), Ltd. ("AMLQ" and together with Peppertree,
"Peppertree/AMLQ" or "Respondents"), through their attorneys, hereby remove the civil action
filed on August 19, 2022, and pending in the Supreme Court of the State of New York, New
York County, No. 652992/2022 (the "Action"), to the United States District Court for the
Southern District of New York, pursuant to 9 U.S.C. § 205, where two related proceedings
addressing the same arbitration at issue in this Action are ***already pending*** before the Honorable
Lewis A. Kaplan.  In support of this Notice of Removal, Peppertree/AMLQ state as follows:

I.      **BACKGROUND**

        A.      **Background Regarding the Parties' Relationship and Governing Documents**

        1.      Peppertree Capital Management, Inc. ("PCMI") is an Ohio-based private equity
firm with extensive experience in the communication infrastructure industry.  In 2014 and 2015,
PCMI invested in the two Peppertree-Respondent companies, Telecom Business Solutions, LLC
and LATAM Towers, LLC, both of which are created and organized under the laws of Delaware.

2.      Respondent AMLQ is a Cayman Island Exempted Company Limited By Shares incorporated in the British Virgin Islands.  It is an affiliate of Goldman Sachs & Co. LLC, a leading investment banking, securities, and investment management firm and, like Peppertree, has extensive experience in communication infrastructure investments.

3.      Petitioners Terra Towers Corp. ("Terra Towers") and TBS Management, S.A. ("Terra TBS," and together with Terra Towers, "Terra") and Petitioner DT Holdings, Inc. ("DTH," and together with Terra, "DTH/Terra" or "Petitioners") are owned and controlled by Jorge Hernandez, a Guatemalan businessman involved in telecommunications, real estate, services, and technology projects.  Terra and DTH both have a local presence in the communication infrastructure industry in Central and South America, where they build towers and other communication infrastructure.  Terra Towers is incorporated in the British Virgin Islands; Terra TBS is a *sociedad de responsabilidad limitada* organized under the laws of Panama; and DTH is incorporated in Panama.

4.      In a series of transactions in 2014 and 2015, Peppertree and AMLQ contributed approximately $125 million to join Terra as shareholders in Continental Towers LATAM Holdings, Limited (the "Company"), a telecommunications infrastructure company based in Central and South America and incorporated in the British Virgin Islands.  The parties' percentage ownership of the Company is as follows: (1) Terra: 54.45%; (2) Peppertree: 32.2%; and (3) AMLQ: 13.35%.

5.      On October 22, 2015, in connection with Peppertree's and AMLQ's investment in the Company, the parties executed a set of governing documents, including a Shareholders Agreement and a Development Agreement.

6.     The Shareholders Agreement between Terra, Peppertree, AMLQ, and the Company contains an arbitration provision, which provides that "any Dispute . . . will be finally settled by binding arbitration," and that the arbitration "shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association [(the "AAA Commercial Rules")] in effect at the time of the arbitration."  Weiner Decl., Ex. B (Shareholders Agreement) § 8.15 (the "Arbitration Agreement").  The Arbitration Agreement broadly applies to "any controversy, claim or dispute arising out of or relating to or in connection with [the Shareholders] Agreement."  *Id.* § 8.14.  It further specifies that "[t]he seat of the arbitration shall be New York, New York" and that the "arbitration shall be conducted by three arbitrators."  *Id.* § 8.15.  It also creates a party-appointed arbitrator system used to select the three-arbitrator panel. *Id.*

7.     The Company is contractually dependent upon DTH for much of its operations. The Company pays DTH a monthly fee for personnel and other services, as set forth in the Development Agreement, to which Terra, DTH, and the Company are parties.  Weiner Decl., Ex. C (Development Agreement) § 1.1(f).  The Development Agreement expressly incorporates the Arbitration Agreement in the Shareholders Agreement.  *Id.* § 3.4.

**B.     Arbitration Commences, and the Three-Member Tribunal Is Confirmed**

8.     On February 2, 2021, in response to Terra's various breaches of the Shareholders Agreement, Peppertree filed a Demand for Arbitration and Statement of Claims with the International Centre for Dispute Resolution ("ICDR") of the AAA against Terra, DTH, and affiliated individuals in New York, New York (the "Arbitration") and designated Mr. Richard Ziegler as its party-appointed arbitrator.

9.      On February 19, 2021, Terra asserted various counterclaims against Peppertree, as well as claims against AMLQ, and designated Ms. Mélida Hodgson as its party-appointed arbitrator.  DTH joined in Terra's designation of Arbitrator Hodgson.

10.     On March 25, 2021, AMLQ countered Terra's counterclaims and joined in Peppertree's designation of Arbitrator Ziegler.

11.     On June 18, 2021, Arbitrators Hodgson and Ziegler presented the parties with a list of five potential chair candidates and asked them to strike two candidates and rank the remaining three to serve as the tribunal chair.

12.     On June 28, 2021, the party-appointed arbitrators informed the parties that Mr. Marc Goldstein had been selected as the tribunal chair through the agreed rank-and-strike process.  On July 19, 2021, following Chair Goldstein's disclosures, the AAA confirmed the three-arbitrator tribunal (the "Tribunal") comprised of Arbitrators Goldstein, Hodgson, and Ziegler.

### C.      The Tribunal Issues the First Partial Final Award

13.     On August 11, 2021, the Tribunal ordered that the Arbitration proceed in phases, with Phase 1 addressing Peppertree/AMLQ's request for specific performance of a forced sale provision of the parties' Shareholders Agreement, and Phase 2 addressing the parties' specific damages claims.

14.     On February 24, 2022, after multiple rounds of briefing and a day-long hearing on Phase 1, the Tribunal issued a ***unanimous***, well-reasoned, and well-supported Partial Final Award ordering that the Company be sold to a third party pursuant to the relevant provisions of the Shareholders Agreement (the "First Partial Final Award").

15.     Peppertree/AMLQ subsequently filed a petition to confirm the First Partial Final Award in the Southern District of New York and Terra/DTH filed a cross-petition to vacate it,

both of which remain pending before Judge Kaplan, *see Telecom Business Solution, LLC, et al. v. Terra Towers Corp.*, et al., No. 1:22-cv-01761-LAK (S.D.N.Y.) ("SDNY Case I").[1]

     **D.**     **Terra Seeks to Circumvent the Arbitration by Filing an Action in Florida State Court, Which Is Removed and Transferred to This Court**

     16.     Meanwhile, on March 7, 2022, Terra filed a lawsuit against Peppertree and AMLQ in Florida state court seeking recission of the parties' "Framework Agreement" authorizing the engagement of independent Company counsel in the Arbitration.  That lawsuit represented a collateral attack on the Tribunal's numerous orders related to the payment and continued engagement of such counsel in the Arbitration.

     17.     Peppertree/AMLQ promptly removed that action to the Southern District of Florida pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), 9 U.S.C. § 205—the same basis for removal as in the instant Action.

     18.     On July 19, 2022, Judge Robert N. Scola, Jr. of the United States District Court for the Southern District of Florida ***denied*** Terra's motion to remand and ordered that the case be transferred to the Southern District of New York, where SDNY Case I and the parties' ongoing arbitration are pending.  Weiner Decl., Ex. D (Florida order).  That case, captioned *Terra Towers Corp. et al. v. Gelber Schachter & Greenberg, P.A., et al.*, No. 22-cv-06150-LAK (S.D.N.Y.) ("SDNY Case II"), was then assigned to Judge Kaplan and designated as "related" to SDNY Case I.

     19.     Several dispositive motions in SDNY Case II remain pending, including Peppertree/AMLQ's motion to compel arbitration and motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[1] The parties have stipulated to stay Phase 2 of the Arbitration pending resolution of SDNY Case I.

**E.      The ICDR Conclusively Rejects Terra/DTH's Arbitrator Bias Claim**

20.      On May 11, 2022, following the First Partial Final Award and other adverse rulings from the Tribunal, Terra/DTH lodged an objection with the ICDR, challenging the Tribunal's continued service on many of the same frivolous grounds asserted in their Petition in this Action.

21.      On June 8, 2022, after **three** rounds of briefing, including several substantive affidavits, the ICDR entered an order **denying** Terra/DTH's motion to disqualify the Tribunal and re-affirming the Tribunal's continued service in the Arbitration.  Terra/DTH did not ask the ICDR to reconsider its decision.

**F.      The Tribunal Issues the Second Partial Final Award**

22.      On August 12, 2022, unaware of Terra/DTH's challenge to its continued service or the ICDR's subsequent ruling, the Tribunal issued another **unanimous**, well-reasoned, and well-supported Partial Final Award (the "Second Partial Final Award") against Terra/DTH, the substance of which is provisionally under seal in SDNY Cases I and II.[2]

23.      On August 16, 2022, Peppertree/AMLQ filed a letter-motion to Judge Kaplan in SDNY Case I, seeking leave to submit a proposed briefing schedule for the parties' forthcoming cross-petitions to confirm and vacate the Second Partial Final Award.  The parties were conferring on the proposed schedule when this Action was filed.

**G.      Petitioners File the New York State Action as Another Forum-Shopping Ploy**

24.      On August 19, 2022, Petitioners brought the instant declaratory judgment action against Peppertree and AMLQ in New York state court, seeking an order: (1) "declaring that the

---

[2] Peppertree/AMLQ filed the Second Partial Final Award under seal in the SDNY Cases I and II in an abundance of caution in the event that Terra/DTH contend that any information in the Second Partial Final Award is confidential and should be sealed, given the Confidentiality Order governing the underlying arbitration and the confidentiality provisions of the parties' governing documents.

composition of the current tribunal frustrates the contractual intent of the parties"; (2) "disqualifying Goldstein, Hodgson [their own party-appointed arbitrator], and Ziegler from serving on the tribunal" based on their alleged bias; (3) "directing that a new tribunal be selected according to the procedures in the Shareholders Agreement"; and (4) "granting such other and further relief as this Court deems just and proper."  Weiner Decl., Ex. A-1 (Pet.) (the "Petition") at 15.[3]

## II.    GROUNDS FOR REMOVAL

### A.    Removal Is Proper Under the New York Convention

25.    Peppertree/AMLQ remove this Action under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, commonly known as the "New York Convention," codified in Section 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-08.

26.    "The goal of the Convention is to promote the enforcement of arbitral agreements in contracts involving international commerce so as to facilitate international business transactions and to unify the standards by which agreements to arbitrate are observed." *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999) (citation omitted).  "The adoption of the Convention by the United States promotes the strong federal policy favoring arbitration of disputes, particularly in the international context." *Id.* (citation omitted).

27.    The New York Convention accords an exceptionally broad removal right: "Where the subject matter of an action . . . pending in a State court relates to an arbitration agreement . . . falling under the Convention, the defendant . . . may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States."  9 U.S.C. § 205; *see also*

---

[3] Peppertree/AMLQ were served by electronic mail on August 22, 2022.

*Goel v. Ramachandran*, 823 F. Supp. 2d 206, 209-10 (S.D.N.Y. 2011) (noting that the Convention has been interpreted to provide for "easy removal" that "confer[s] jurisdiction liberally") (citation omitted).  Indeed, Section 205 "added one of the broadest removal provisions . . . in the statute books" such that "the general rule of construing statutes strictly against removal cannot apply to [New York Convention] cases."  *Cathay Cap. Holdings II, LP v. Zheng*, 2021 WL 3417956, at *2 (D. Conn. Aug. 5, 2021) (citing *Acosta v. Master Maintenance & Const. Inc.*, 452 F.3d 373, 377 (5th Cir. 2006)).

28.     Removal is proper under Section 205 where: (i) there is an arbitration agreement that "falls under" the Convention; and (ii) the subject matter of the state action "relates to" the arbitration agreement.  *See Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 863 F. Supp. 2d 351, 354-55 (S.D.N.Y. 2012).  Both requirements are readily satisfied here.

### i.     The Arbitration Agreement "Falls under" the Convention

29.     An arbitration agreement "falls under" the Convention where: (1) there is a written arbitration agreement; (2) the agreement provides for arbitration in the territory of a signatory to the Convention; (3) the subject matter of the agreement is commercial; and (4) a party to the agreement is not an American citizen.  *See id.* (citing *Smith/Enron*, 198 F.3d at 92).

30.     The Arbitration Agreement easily meets all four criteria, as Judge Scola of the Southern District of Florida ***already found*** in denying Terra's motion for remand in connection with SDNY Case II.  *See* Weiner Decl., Ex. D (Florida order) at 4.  ***First***, there is a written agreement to arbitrate.  Terra, Peppertree, and AMLQ are parties to the Shareholders Agreement containing the Arbitration Agreement, which broadly applies to "any controversy, claim or dispute arising out of or relating to or in connection with [the Shareholders] Agreement." Weiner Decl., Ex B (Shareholders Agreement) § 8.15; *see also Smith/Enron*, 198 F.3d at 93 ("an arbitral clause in a contract . . . signed by the parties" satisfies the written-agreement

requirement).  Terra and DTH are also signatories to the Development Agreement, which expressly incorporates the Arbitration Agreement.

31.    ***Second***, the Arbitration Agreement provides for arbitration in New York, New York.  The United States is a signatory to the Convention.  *See* 9 U.S.C. § 201.

32.    ***Third***, the Arbitration Agreement arises out of a commercial legal relationship, *i.e.*, an agreement among shareholders to the Company, which was formed for the commercial purpose of developing and operating telecommunications towers in Central and South America. *See* Weiner Decl., Ex. A-1 (Pet.) ¶ 25.

33.    ***Fourth***, several parties to the Arbitration Agreement are not American citizens: Terra Towers is incorporated in the British Virgin Islands, *id.* ¶ 17; Terra TBS is a *sociedad de responsibilidad limitada* organized under the laws of Panama, *id.* ¶ 18; DTH is incorporated in the Republic of Panama, *id.* ¶ 19; and AMLQ is a Cayman Island Exempted Company Limited by Shares incorporated in the British Virgin Islands, *id.* ¶ 22.  Accordingly, the Arbitration Agreement "falls under" the Convention.

### ii.    This Action "Relates to" the Arbitration Agreement

34.    Courts in this Circuit have held that "[w]henever an arbitration agreement falling under the Convention could ***conceivably*** affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit" for purposes of removal jurisdiction under Section 205.  *Schorr v. Am. Arb. Ass'n*, 2022 WL 294849, at *9 (S.D.N.Y. Feb. 1, 2022) (emphasis added) (internal citations omitted); *see also id.* ("[T]he phrase 'relates to' is plainly broad, and has been interpreted to convey sweeping removal jurisdiction in analogous statutes" (citing *Infuturia Global Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1138 (9th Cir. 2011)).

35.    Here, there is no question that the Arbitration Agreement could "conceivably" affect the outcome of this Action.  To begin, the AAA Commercial Rules—which are expressly

incorporated by the Arbitration Agreement—dispose of Petitioners' request to disqualify the Tribunal. Specifically, AAA Commercial Rule R-18 provides that "[u]pon objection of a party to the continued service of an arbitrator, . . . the AAA shall determine whether the arbitrator should be disqualified . . . and shall inform the parties of its decision, *which decision shall be conclusive*." (Emphasis added.). As a result, Petitioners are bound by the ICDR/AAA's June 8, 2022 decision *denying* their disqualification motion based on substantially similar allegations. *See, e.g.*, *NGC Network Asia, LLC v. PAC. Grp. Int'l, Inc.*, 2012 WL 377995, at *3 (S.D.N.Y. Feb. 3, 2012), *aff'd*, 511 F. App'x 86 (2d Cir. 2013) ("In accordance with the Rules, [the losing party] made its objections to the AAA and the AAA determined that [the arbitrator] would not be disqualified. The law in this District and Circuit clearly states that the parties are bound by the AAA's determination.").

36.     Moreover, Petitioners expressly ground their requested relief in the Arbitration Agreement, seeking an order "declaring that the composition of the current tribunal frustrates the *contractual intent of the parties*" and "directing that a new tribunal be selected *according to the procedures in the [Arbitration Agreement of the] Shareholders Agreement*." Weiner Decl., Ex. A-1 (Pet.) at 15 (emphasis added). In other words, Petitioners themselves refer the presiding judge to the Arbitration Agreement to grant their requested relief.

37.     Courts have consistently found that similar state-court petitions to disqualify arbitrators "relate to" arbitration agreements under the New York Convention because, as here, they implicate the agreements' provisions (or AAA Commercial Rules incorporated by the agreements) governing arbitrator appointment, neutrality, disclosures, and disqualification. In *York Hannover Holding A.G. v. Am. Arbitration Ass'n*, 794 F. Supp. 118 (S.D.N.Y. 1992), for example, the federal court found that a state-court petition seeking disqualification of an AAA

arbitral panel was properly removed under Section 205 where the parties' agreement incorporated the AAA rules governing arbitrator appointment. *Id.* at 122. The court reasoned that, because the petitioner sought "by its action to reverse the AAA's implementation of those rules and expel from office the presently appointed arbitrators," it could "not be reasonably argued that the action d[id] not 'relate' to the parties' arbitration agreement." *Id.*; *see also Kolel*, 863 F. Supp. 2d at 356 (denying motion to remand and holding that action seeking a declaratory judgment voiding as unenforceable an arbitration decision due to alleged arbitrator bias was "related to" arbitration agreement because "the allegations necessarily involve[d] the Arbitration Agreement's provision for a neutral arbitrator [and] the proper procedures for the arbitration" and "resolution of the Removed Action w[ould] require reading and examining the operation of the Arbitration Agreement").

38.     For those reasons, this Action directly "relates" to the Arbitration Agreement, and removal is proper under the New York Convention.

## III.     COMPLIANCE WITH REMOVAL REQUIREMENTS

39.     Pursuant to 28 U.S.C. § 1446(b)(2)(A), all Respondents in this Action, including the two Peppertree Respondents and AMLQ, have joined in and consent to this Notice of Removal.

40.     This Notice of Removal is timely filed in accordance with 9 U.S.C. § 205, which provides that "an action or proceeding pending in a State court [that] relates to an arbitration agreement or award falling under the Convention" may be removed to federal court "*at any time*" before the trial of the underlying state court action. 9 U.S.C. § 205 (emphasis added); *see also Goel v. Ramachandran*, 823 F. Supp. 2d 206, 211 n.2 (S.D.N.Y. 2011) (noting that "[Section] 205's allowance of removal at any time before trial is another indication that § 205 is intended to be broader than the general removal statute, which requires a defendant to remove a

case within thirty days of receiving the initial pleadings or being served with the summons"). Because no trial has taken place, removal is timely under Section 205.

41.     Removal to this Court also comports with Section 205's requirement that the action be removed "to the district court of the United States for the district and division embracing the place where the action or proceeding is pending."  9 U.S.C. § 205.  Petitioners filed their Petition in the Supreme Court of the State of New York, New York County, which is located within the Southern District of New York.

42.     This proceeding is not one described as non-removable under 28 U.S.C. § 1445.

43.     Promptly upon filing this Notice of Removal, a true and correct copy of the Notice will be provided to all adverse parties pursuant to 28 U.S.C. § 1446(d).  Pursuant to Rule 5(d) of the Federal Rules of Civil Procedure, Peppertree/AMLQ will file with this Court a Certificate of Service of notice to the adverse parties of removal to federal court.

44.     Upon filing this Notice of Removal, Peppertree/AMLQ will also promptly file a Notice of Filing of Notice of Removal with the Clerk of the Supreme Court of the State of New York, New York County, in accordance with 28 U.S.C. § 1446(d).

## IV.     RESERVATION OF RIGHTS

45.     By filing this Notice of Removal, Peppertree/AMLQ do not waive and expressly reserve any rights, remedies, defenses, exceptions, and motions that may be available to them, including without limitation any procedural, jurisdictional, or substantive defenses, and all rights to recover the fees, expenses, and damages resulting from Petitioners' commencement of this Action.  By filing this Notice of Removal, Peppertree/AMLQ do not concede that the allegations in the Petition state a valid cause of action under any applicable law.  And no statement or omission in this Notice should be deemed an admission of any of the allegations or damages sought in the Petition.

46.     Peppertree/AMLQ reserve the right to amend, supplement, or correct this Notice of Removal as permitted by law.

WHEREFORE, the action previously filed in the Supreme Court of the State of New York, New York County, is hereby removed to the United States District Court for the Southern District of New York.

Dated:  August 26, 2022

By: */s/ Katherine M. Poldneff*
Michael N. Ungar
(*pro hac vice* forthcoming)
Katherine M. Poldneff
Gregory C. Djordjevic
(*pro hac vice* forthcoming)
**ULMER & BERNE LLP**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax:    (216) 583-7001
mungar@ulmer.com
kpoldneff@ulmer.com
gdjordjevic@ulmer.com

David A. Landman
**ULMER & BERNE LLP**
275 Madison Avenue, Suite 2002
New York, New York 10016-1138
Phone: (917) 262-0470
Fax:    (917) 262-0480
dlandman@ulmer.com

*Counsel for Telecom Business Solution, LLC
and LATAM Towers, LLC*

Respectfully submitted,

By: */s/ Gregg L. Weiner*
Gregg L. Weiner
Ethan R. Fitzgerald
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Phone: (212) 596-9000
Fax:    (212) 596-9090
gregg.weiner@ropesgray.com
ethan.fitzgerald@ropesgray.com

Daniel V. Ward
(*pro hac vice* forthcoming)
Katherine M. McDonald
(*pro hac vice* forthcoming)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Phone: (617) 951-7000
Fax:    (617) 951-7050
daniel.ward@ropesgray.com
katherine.mcdonald@ropesgray.com

*Counsel for AMLQ Holdings (Cay), Ltd.*