**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| TERRA TOWERS CORP., TBS MANAGEMENT, S.A., and DT HOLDINGS, INC., |
| *Petitioners,* |
| v. |
| TELECOM BUSINESS SOLUTION, LLC, LATAM TOWERS, LLC, and AMLQ HOLDINGS (CAY) LTD., |
| *Respondents.* |

No. 22-cv-07301-LAK

## PETITIONERS' REPLY MEMORANDUM IN SUPPORT OF
## MOTION FOR RECONSIDERATION

Petitioners Terra Towers Corp. ("Terra Towers"), TBS Management, S.A. ("Terra TBS"), and DT Holdings, Inc. ("DTH" and, together with Terra Towers and Terra TBS, "Terra"), file the instant reply in further support of their March 19, 2024, Motion for Reconsideration or Alteration (DE 60-62). In support thereof, Petitioners state as follows:

### I.      PRELIMINARY STATEMENT

Respondents' Opposition brief (the "Opposition") (DE 66) seeks only to sidestep substantial issues. They urge the Court to (1) ignore material newly discovered evidence based on the false contention that Petitioners had not tried to bring it to the Court's attention prior to the Court issuing its Order—they had, (2) overlook examples of judicial review on disqualification even after arbitration bodies have ruled "conclusively," and (3) ignore as being speculative the tribunal's misconduct through demonstrated disclosure failures, confidentiality threats, public declarations of bias, and breaches of the AAA Code of Ethics. The Court is urged not to succumb to the Opposition's calls for passivity but to instead review the entirety of the evidence and context to evaluate the tribunal's impartiality.

## II.      ARGUMENT

### i.      Petitioners Were Denied the Opportunity to Supplement Their Amended Petition Which Resulted in an Order Based on an Incomplete Recount of the Facts

The Opposition is no more than an attempt to distort facts in these proceedings in order to sway attention away from the underlying misconduct by the arbitral tribunal. Contrary to Respondents' blatantly incorrect assertion that "[Petitioners] cannot claim to have been ignorant of the blog or unable to bring it to the Court's attention prior to the February 21, 2024 order," (Opposition at 2-3)—only the latest example in a long line of misrepresentations to this Court by Respondents—Petitioners had in fact moved for leave to supplement their amended petition to disqualify the arbitral panel on April 27, 2023 (DE 44-45). Therein, Petitioners presaged the very situation that has subsequently unfolded: "*[i]f Terra/DTH are not permitted to supplement their petition with additional facts demonstrating that bias, this Court's decision will be based on an incomplete record.*" (DE 45 at 7).

The motion for leave had not been ruled upon  until this Court denied it nearly one year later as futile in the same February 21, 2024, Order denying the petition to disqualify. (DE 59). At the very least, the Respondents' skewed depiction of the case's procedural history serves to illustrate to this Court a pattern of how they have similarly twisted and misrepresented the facts of the underlying arbitration as well.

### ii.      The Issue Concerns the Appearance of Bias by the Arbitral Tribunal, Not the Conclusiveness of the ICDR's Decision.

Considering the lack of a substantive defense regarding the principal issue at hand, Respondents have chosen to concentrate their efforts on a peripheral argument. They contend that since the Petitioners initially presented the matter to the International Centre for Dispute Resolution (ICDR), in the procedurally correct manner, and the ICDR subsequently rejected it, this outcome should preclude this Court from performing its own independent judicial review concerning the

arbitrators' integrity and impartiality. But this stance fails to recognize the distinct role of the judiciary in scrutinizing the ethical standards and impartiality of arbitration proceedings, independent of the outcomes rendered by arbitration institutions. Respondents' flawed interpretation of the applicable AAA rule rendering the ICDR's determination as "conclusive" would mean that the ICDR is squarely free to disregard—with absolute freedom from judicial review—its disclosure and impartiality commitments. That is simply not the case.

Courts have examined petitions for disqualification notwithstanding decisions deemed to be final. *See Grendi v. LNL Const. Mgmt. Corp.*, 175 A.D.2d 775, 777 (1st Dep't 1991) (the purportedly "conclusive" decision of the AAA denying the petitioner's request to disqualify the panel did not stop the court from disagreeing with the AAA and disqualifying the arbitrators mid-proceeding); *see also Matter of Excelsior 57th Corp. (Kern)*, 218 A.D.2d 528 (N.Y. App. Div. 1995) (disqualifying an arbitrator for displaying extreme partisanship and holding that petitioner was not precluded from bringing the disqualification motion after the IAS court's earlier denial).

### iii.     The Blogposts are Essentially Public Declarations by the Chairman on How He Plans to Rule in Matters Still Pending Before Him.

What the Opposition describes as being a "throw away argument," is in fact a long held standard that under New York law, it is "whether the arbitration process is free of the appearance of bias" that controls disqualification of arbitrators. *Rabinowitz v. Olewski*, 100 A.D.2d 539, 540 (N.Y. App. Div. 1984). It serves noting that in *Rabinowitz*, disqualification was granted despite there being no evidence that any particular arbitrator had read, credited, or been influenced by the offending letter that was the subject of the court's "appearance of bias" determination: a stark contrast with the ample amount of evidence of bias Petitioners have previously presented to the Court in this and similar proceedings.[1]

---

[1] Petitioners incorporate by reference their filings before this Court in Case No. 22-01761, DE 27, 108, 141, 161, and respective related memorandums and replies.

While Respondents have unequivocally shown that they believe bias and partiality bears no gravity in legal proceedings, this does not spare them from the reality that Petitioners' Motion tendered newly discovered facts that prove just that. Here, the Chairman's blog well exceeds both the "appearance of bias" standard for disqualification and the standard for relief under Rule 59(e). One such  instance is *On Contempt*, a flagrant display of prejudgment by the tribunal published August 4, 2023. [2]

Specifically, Respondents have amended their Statement of Claims in Phase 2 of the arbitration to seek damages for Petitioners' noncompliance with the First Partial Final Award ("FPFA"), ordering the sale of the Company. Meaning, determinations as to whether Petitioners have obstructed the sale is a matter yet to be argued on its merits in Phase 2,  in theory.

The Parties, however, need waste no more resources and need look no further than none other than the Chairman's blogpost *On Contempt* to know the outcome. Graciously described therein is a "*losing party*" "*determined to fight on, not only after an adverse Award but beyond the judicial confirmation of the Award*" and "*determined to pay any price for victory decides to marginalize the arbitration into but one of many battlefronts in a multiple-forum war.*" Rich with its clever insinuations and veiled references, it then goes on to suggest that Respondents may seek "*coercive incarceration as a civil contempt sanction*" in Phase 2 of the arbitration against Terra's principle, Hernandez, for non-compliance with the  FPFA.[3] Eloquently put, "*contemnor goes behind bars while holding the keys to her release: compliance with the Judgment.*"[4]

The Chairman publicly blogs and brags about throwing a party in the position of Hernandez in jail for alleged non-compliance with the First Partial Award *while he is sitting in judgment of the*

---

[2] Rodriguez Declaration in support of Reconsideration Ex. 2

[3] Rodriguez Declaration in support of Reconsideration Ex. 2

[4] *Id.*

*issue* of the alleged non-compliance in Phase 2 of these proceedings. "The test is not whether actual bias existed, but whether the circumstances would give the appearance of bias or be reasonably regarded as bias."[5] Arbitrators have been disqualified when they display extreme partisanship with respect to issues still to be determined in the arbitration and evidence shows that he will be either "deaf to the testimony or blind to the evidence presented." *Matter of Excelsior 57th Corp. v. Kern*, 218 A.D.2d 528, 530 (1st Dep't 1995).

### iv.     The Timeline of Events Clearly Signals Underlying Prejudice, Ruling Out Any Possibility of Petitioners' Claims Being Merely Speculative.

As argued in Petitioners' 59(e) motion for reconsideration, and as outright ignored in the Opposition, the timeline related to the Chairman's blog is hardly a coincidence. The Chairman had refrained from posting his Arbitration Commentaries for a period of about a year between 2021 and 2022. It was conveniently not until only one month after the allegations of bribery and Terra's initiation of vacatur proceedings that the Chairman decided to announce his grand return with *The Blog is Back!*[6]

Likewise, as discussed above, *On Contempt* was published around the same time that compliance with the FPFA was at issue in the arbitration, but before proceedings on its merits began.[7] It is a clear example  of the Chairman's predetermination made long before the commencement of Phase 2 proceedings—the supposed period during which the matter of noncompliance was to be reserved for—that Petitioners (and particularly Hernandez) have obstructed the sale.

---

[5] *DeCamp v. Good Samaritan Hosp.*, 66 A.D.2d 766, 767–68 (N.Y. App. Div. 1978) ("Basic to every judicial and quasi-judicial proceeding is that the integrity of the decision-making body must be above reproach and even the appearance of impropriety should be avoided." (citing NY ST Code of Judicial Conduct, Canon 2).

[6] Rodriguez Declaration in support of Reconsideration Ex. 4
[7] Rodriguez Declaration in support of Reconsideration Ex. 2

v.      **The Newly Discovered Evidence Must be Coupled with the Bribery Allegations and Disclosure Failures.**

Even assuming this Court is of the opinion that the Chairman's blog is not enough to warrant disqualification of the tribunal, this evidence must be considered alongside Petitioners original arguments giving rise to the disqualification petition.

First, there was an internet post purporting to report on a whistleblower at Goldman Sachs, an affiliate of Respondents, accusing the Chairman of potentially having accepted a bribe. Second, despite Petitioners attempt to resolve the matter privately with the ICDR, Respondents brought it to the attention of the tribunal and baselessly accused Petitioners of planting the post and tainting the Chairman's reputation. Third, the tribunal then began its own investigation into the allegation against the Chairman himself, rather than appropriately reserve it for the ICDR. Fourth, only at this point did the Chairman disclose a familial relationship to a former Goldman Sachs partner with whom he admitted to discussing the arbitration and potential conflict of interest implications  prior to the commencement of the arbitration. Nevertheless, he still failed to disclose this relationship in his Arbitrator's Oath.

Petitioners did not present the internet post on the bribery allegation to this Court because its truth was not material to their claim.[8] Petitioners instead presented to this Court that a Chairman who is of the false belief that one of the parties have planted a post accusing him of bribery cannot reasonably be believed to remain completely unbiased and impartial. And taken together, the allegations of bribery, the disclosure failures, the self-investigation naturally influenced by personal

---

[8] "The Court should not allow itself to be distracted by irrelevant issues. It does not matter whether the bribery allegations are true; what matters is that Peppertree/AMLQ brought them to the tribunal's attention. It does not matter who made the allegations; what matters is that Peppertree/AMLQ accused Terra/DTH of doing so and the tribunal believed them. Indeed, Peppertree/AMLQ concede that the source of the post is irrelevant — but still spend pages trying to convince the Court that Terra/DTH were behind it." Petitioners' Reply in Support of their Petition to Disqualify (DE 39 at 1).

stakes in the outcome, along with blog posts riddled with predeterminations and contempt for Petitioners, all justify reconsideration and disqualification.[9]


## III.     CONCLUSION

Once more, it comes as no surprise that Respondents hold impartiality and fairness in low regard. However, the public nature of the Chairman's blog, coupled with its opinions and advocacy favoring one party in an ongoing arbitration satisfies the standards of a Rule 59 (e) motion that relief is warranted where newly discovered evidence may reasonably have led to a different result. *See Morisseau v. DLA Piper*, 532 F.Supp.2d 595, 598, 624 (S.D.N.Y., 2008).

For the foregoing reasons, Petitioners respectfully request that the Court Reconsider or Alter its Memorandum Endorsement (DE 59) (the "Endorsement"), dated February 21, 2024, and grant Terra/DTH's Petition to Disqualify.


Dated:  Miami, FL

April 8, 2024

Respectfully submitted,

**CAREY RODRIGUEZ LLP**
By: */s/ Juan J. Rodriguez*
Juan J. Rodriguez*

1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Phone: 305-372-7474
Fax: 305-372-7475
jrodriguez@careyrodriguez.com
*Admitted Pro Hac Vice*

*Counsel for Petitioners*

---

[9] Petitioners' Amended Petition to Disqualify (DE 15 ¶ 62-100).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was filed with the Clerk using appellate CM/ECF system on April 8, 2024. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ <u><i>Juan J. Rodriguez</i></u>

Juan J. Rodriguez

*Counsel for Petitioners*
